UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

RANDAULL ANDREW COBB, d/b/a
RANDAULL & V'S TAX SERVICES
a/k/a RANDY COBB, d/b/a RANDY's
PHENOMENAL EATS

                        Debtor.
-----------------------------------------------------------------X
RANDAULL ANDREW COBB,

                        Plaintiff,

    -against-

JOEL KAUFMAN, MONROE UNIQUE HOMES, LLC,
SEA & SUN GROUP, LLC, JOHN DOES 1-5

                        Defendants.
-----------------------------------------------------------------X

Case No. 19-40941 (NHL)

Chapter 11

Adv. Pro No.

## ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT

Randaull Andrew Cobb (hereinafter referred to as the "Debtor" or "plaintiff"), by his attorneys, Kornfeld & Associates, P.C., complaining of the defendants, alleges as follows:

### THE PARTIES

1. Plaintiff, Randaull Andrew Cobb is an individual, who is a resident of Kings County, New York, and whose primary residence is 253 Monroe Street, Brooklyn, New York 11216 ("plaintiff's home"). He is a debtor in possession, having filed a petition for Chapter 11 relief on February 19, 2019 under Docket No. 19-40941nhl (the "Chapter 11 Proceedings").

2. Defendant Joel Kaufman ("Kaufman") is an individual who, on information and belief, resides at 41 Throop Avenue, apartment # 7R, Brooklyn, New York 11206 address. Upon

information and belief, Kaufman is the sole member, principal, managing member, director and/or officer of defendant Monroe Unique Homes, LLC.

3. Defendant Monroe Unique Homes LLC ("Unique Homes") is a New York limited liability company, with a registered address at 199 Lee Avenue, Suite 727, Brooklyn, New York 11211, and an additional address at 694 Myrtle Avenue, Brooklyn, New York.

4. Defendant Sea & Sun Group, LLC ("Sea & Sun") is a New York limited liability company, with a registered address and offices at 161 West 54th Street, New York, New York 10019. Sea & Sun alleges that it is the current holder (*i.e.*, the legal owner) of the promissory note referred to hereinafter that is secured by a mortgage recorded against plaintiff's home and premises at 253 Monroe Street, Brooklyn, New York.

5. Defendants, John Does 1-5 are male individuals who participated with defendants Kaufman, Monroe and Sea & Sun in the events described in this complaint, but whose names and addresses are unknown to the plaintiff.

## JURISDICTION

6. On February 19, 2019, plaintiff filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York and is currently a debtor-in-possession.

7. This is an adversary proceeding, in which the plaintiff seeks a declaratory judgment declaring him the owner in fee simple of the real property located at 253 Monroe Street, Brooklyn, New York 11216, pursuant to Bankruptcy Rule sections 7001(2) and 7001(9).

8. The Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §1334, and Bankruptcy Rule §§ 7001(2) and (9).

9. This case is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A).

## THE FACTS

10. Plaintiff purchased 253 Monroe Street, Brooklyn, New York 11216 (the "Premises") on May 18, 2007 for $630,000. The Premises are a four-family dwelling. The financing for the purchase of the Premises was originated through the subprime mortgage lender that existed as Greenpoint Mortgage Funding, Inc. ("Greenpoint"), with the origination of two mortgage loans, which mortgage loans were referred to at the time as an 80/20 financing. Greenpoint provided plaintiff with 100% financing to purchase the Premises. As such, two separate promissory notes were issued by plaintiff in favor of Greenpoint, which notes were secured by two separate mortgages against the Premises, each executed at the closing on May 18, 2007. One note was in the amount of $560,000, and the other in the amount of $70,000.

11. The mortgage for the first note – which note is at issue in the Chapter 11 Proceedings -- in the amount of $560,000 (the "First Note Mortgage"), was recorded in the Office of the City Register of the New York City Department of Finance (in "ACRIS"), in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") on July 12, 2007. On September 2, 2009, a purported assignment of the aforesaid mortgage dated June 26, 2009 was recorded in ACRIS, intended to indicate an assignment from MERS to an entity called Waterfall Victoria Master Fund Ltd. ("Waterfall Ltd."). On information and belief, the purported assignment of the First Note Mortgage from MERS to Waterfall Ltd. is defective and otherwise unenforceable as a matter of law (the "Defective MERS Assignment No. 1"). .

12. On November 24, 2010, Waterfall Ltd. commenced a foreclosure action to collect on the First Note and on the basis of the Defective MERS Assignment No. 1 against plaintiff, in the New York State Supreme Court, Kings County, Index No. 28994/2010. Upon information and belief, plaintiff was not served with the summons and complaint.

13. Around the beginning of 2011, plaintiff received a standard form notice from the

court to appear at a foreclosure conference. Subsequently, plaintiff, *pro se*, attended multiple settlement conferences between March 17, 2011 and October 5, 2011. At those conferences Waterfall Ltd. represented that the servicer for the mortgage was Quantum Loan Servicing. During this time, on July 25, 2011, Waterfall Ltd. presumably assigned the First Note Mortgage to a separate entity named Waterfall Victoria Master Fund 2008-1 Grantor Trust Series A ("Waterfall Trust"), and, at some point in 2012, the servicer for the mortgage was changed to Statebridge Company, LLC ("Statebridge").

14. On October 5, 2011, the foreclosure action was referred out of the settlement conference part to what is designated as the Independent Assignment Part of the Court (the "IAS Part"). For more than one year from October 5, 2011, neither Waterfall Ltd. nor Waterfall Trust took any steps to prosecute the foreclosure action before the State Supreme Court.

15. In or around March 2013, Waterfall Ltd. filed a motion to amend the foreclosure complaint and also obtain a default against plaintiff. At or about that time, plaintiff had retained counsel to represent him before the State Supreme Court. The default request was denied by Justice Laura Jacobson, JSC, who issued an interim order that questioned the assignment of the mortgage (i.e., the Defective MERS Assignment No. 1), and the right of the alleged assignee to prosecute the foreclosure action against plaintiff.

16. Thereafter, in or about January/February of 2013, plaintiff received a call from an individual who identified himself as Kaufman and told plaintiff he had been "investigating" him because he was in a foreclosure. Two days later several individuals, including Kaufman, approached plaintiff in plaintiff's family's restaurant at 602 Nostrand Avenue, Brooklyn, New York and told him that they buy "distressed" properties and wanted to buy the Premises. Kaufman told plaintiff that there was a "fraudulent mortgage" against the Premises.

17. In this and subsequent conversations with plaintiff, Kaufman repeated the

"fraudulent mortgage" statement and also told plaintiff – misrepresenting to plaintiff in an effort to defraud him out of title to his home and the Premises -- that the Premises were in the last stages of foreclosure so it would be in your best interest to sell it, that he needs to sell now, that he does not have the financial means to keep this case going before the New York State Supreme Court, that he may never get the Premises free and clear of the Greenpoint mortgages recorded against it, that the State Supreme Court case is going nowhere, and that he ( plaintiff) is in a "mortgage scam." On information and belief, Kaufman's intention was to lead plaintiff to believe that he (plaintiff) was a guilty party in the scam, in order to induce him to transfer title to the Premises to him for less that its market value.

18. Kaufman's continued coercion included statements to the effect that plaintiff's "family life is in trouble, but we can help you;" "We know about your family's house at 245 Weirfield Street;" and, "I will buy that house as well."

19. Despite being told by plaintiff that he was represented by counsel and given contact information, Kaufman continued to contact plaintiff and offered $160,000 in cash for the premises. Plaintiff rebuffed the offer, but that did not deter Kaufman and his unidentified cohorts from continuing to harass plaintiff, in an all-out effort to get him to sell them the Premises for an amount that would result in the transfer of the equity value in the Premises to Kaufman and/or Monroe, and their cohorts.

20. Thereafter, in or about late January into early February of 2013, plaintiff received a call from an individual who identified himself as "Mr. Rosenberg," saying he was a representative of the loan servicer, Statebridge. "Mr. Rosenberg" told plaintiff that the "note had been sold from Victoria Waterfall to another servicing company and some gentlemen have inquired about your property, but you shouldn't deal with them, deal with me." 'Mr. Rosenberg" said "we'll pay you $40,000 to walk and leave the premises."

5

21. Plaintiff refused the offer and advised "Mr. Rosenberg" to speak with his attorney, who was plaintiff's attorney of record in the foreclosure, and thus known to Statebridge. Mr. Rosenberg did not impart any information on the alleged new servicer and told plaintiff he would be contacted by a "man named Moshe, who's the holder of your note." "Mr. Rosenberg" repeatedly told plaintiff that he should not contact Statebridge or him for that that matter, and he would be receiving a statement from the new owner of the note.

22. Plaintiff never received a "statement," but the day after the above-mentioned conversation, an individual named Moshe showed up at plaintiff's restaurant along with another individual who identified himself as "Rob." Moshe and Rob told plaintiff they held the note, that plaintiff was in default, that the note was fraudulent, that plaintiff may be involved in criminal activity, that they will beat any offer, and they would handle everything to take the pressure off the plaintiff. Plaintiff subsequently learned that Moshe was a representative of Sea & Sun. The aforementioned statements were very similar to those made by "Mr. Rosenberg" to plaintiff.

23. Soon after, Kaufman appeared at the restaurant. He told plaintiff that Moshe and Rob were liars, and that only he could help plaintiff. Thereafter, Kaufman continued to show up at the restaurant every few days, bringing bags of cash and attempting to convince plaintiff to sell the Premises to him. Plaintiff felt intimidated but refused to sell. During this time Moshe and Rob continued to call and/or show up at the restaurant to convince plaintiff to work with them. They threatened that if he didn't, they would tell plaintiff's tenants to stop paying rent. All three individuals repeatedly also told plaintiff that his attorney was incompetent, and he will lose in court.

24. Kaufman's strategy of making plaintiff feel vulnerable and in a "no win" situation was beginning to pay off. Plaintiff began to believe that Kaufman was trying to help him and his only way out was to sell Kaufman the Premises. Notwithstanding, Moshe and Rob continued to

show up at the restaurant claiming their company, Sea & Sun, owned the pertinent promissory note. They also came to plaintiff's residence to try to convince him to sell the Premises to them.

25. Finally, Kaufman came to plaintiff's restaurant and convinced plaintiff to accompany him to his attorney Andrew Tillem's office. They told plaintiff how dire his case was and then Kaufman took out a plastic bag filled with stacks of bills wrapped in bundles that looked like tens of thousands of dollars. Kaufman told plaintiff to "count it" and to "just sign the paper so I can defend the issue with the bank!" Plaintiff refused to sign and did not count the money.

26. Kaufman continued his pressure tactics, showing up at the restaurant, until he convinced plaintiff to go to Tillem's office again on or about February 13, 2013. However, this time Kaufman first drove to the Brooklyn Navy Yard where he picked up two more men. They drove plaintiff around for some time making him frightened and nervous. Once they arrived at Tillem's office, Kaufman again made his pitch, telling plaintiff that his situation was dire, he was going to lose his home and his counsel doesn't know what she's doing. Tillem agreed with everything Kaufman said. They told plaintiff he needed to work with them to "clear everything with the bank. And if that doesn't work, we need to reverse everything back to you and do a short sale."

27. Kaufman went on, "I am a man of my word, and I will give you this $160,000 no matter what." He then asked plaintiff to sign a consent form to delay the foreclosure. One of the other men who was in the car earlier asked plaintiff numerous questions in order to "verify his identity." For instance, he asked plaintiff whether he had any outstanding parking tickets/violations and if there were smoke detectors in his home. Kaufman, in the presence of the others, including Tillem, told plaintiff to answer all the questions "No."

28. Plaintiff was then given two sheets of paper by Kaufman and told to sign quickly. Cash was in plain view in clear bags on the table in front of him. Plaintiff felt that the deck was

7

stacked against him and he had no choice but to sign the papers that he was not permitted an opportunity to read. Kaufman, Tillem and the others repeated that his lawyer was incompetent, and he could be found guilty of mortgage fraud.

29. Plaintiff then accepted the money, reluctantly. He was told by Kaufman to take out $900 and pay Tillem for his time, which he did. Kaufman then took plaintiff back to his car and drove him home. Plaintiff did not count the money in the bag until after he returned home and discovered it was *not* $160,000 but was only $24,100.

30. As it turned out, the documents that were given to plaintiff in Tillem's office for him to sign under the false pretenses that he (plaintiff) was signing a consent to for Kaufman to attend to the foreclosure action with the plaintiff and its servicer, on his behalf, were for another purpose. On information and belief, Kaufman and/or his representatives or cohorts then forged or fictitiously placed plaintiff's signature on several documents, including a document entitled Residential Contract of Sale (the "Putative 2013 Contract of Sale"), entitled promissory note (the "Putative 2013 Note"), and entitled This Indenture (the "Putative 2013 deed"). .

31. The Putative 2013 Contract of Sale is undated, indicating "January ___, 2013" and also indicates a purchase price of $175,000. The closing date was "on or about October 1, 2014, at the "offices of Andrew Tillem, Esq., 228 Montrose Avenue, Brooklyn, New York 11206."

32. The Putative Contract of Sale is fatally defective per New York Real Property Law §265-a(4), since it does not contain the telephone number of the purchaser, a complete description of the terms of payment, any services that the purchaser represents he will perform before or after the sale, terms of any re-conveyance arrangement and, notice of the right to cancel the Contract, all of which are required by statute, among other defects. Furthermore, the form Notice of Cancellation as required by RPL sec. 265-a(6) was not attached to the Putative Contract of Sale.

33. The Putative 2013 Note is dated February 17, 2013 and indicates a face amount of

8

$110,000, payable to plaintiff. It further specifies that Unique Homes will only pay the note in full "if the mortgages dated May 18, 2007...are vacated by the Court." The Putative 2013 Note is signed by "Joel Kaufman-Member of Unique Homes." On information and belief, the Putative 2013 Note is an illusory or fraudulent contract or instrument, including the fact that, on information and belief, Unique Homes was neither registered, nor existed, nor was authorized to do business in the State of New York on February 17, 2013.

34. The Putative 2013 Deed from plaintiff to Unique Homes is dated February 18, 2013, but the Real Property Transfer Report filed in ACRIS with such deed has the date of transfer as February 13, 2013. On information and belief, the Putative 2013 Deed was an illusory or fraudulent contract or instrument for a number of reasons, including the fact that at the time of the alleged execution of the Putative 2013 Deed, Unique Homes was neither registered, nor existed, nor was authorized to do business in the State of New York, and plaintiff's signature was placed on such deed fictitiously or was forged. On information and belief, plaintiff was not in the presence of a notary public nor was he with Kaufman or with Kaufman's counsel Tillem on February 18, 2013.

35. Upon information and belief, plaintiff's signature was forged on the Putative 2013 Deed, as well as on other documents. The Putative 2013 Deed was subsequently recorded, unlawfully and/or fraudulently, in ACRIS on or about March 8, 2013, along with some additional forms, none of which were signed by plaintiff, or on which his signature was fictitiously placed. Upon information and belief, these forms were prepared by Kaufman or someone acting on his behalf, with Kaufman utilizing plaintiff's signature on the purported consent he was told to sign to prepare a collective of documents that became the means through which Kaufman, acting individually and under the name of Unique Homes, effected the foreclosure rescue scam and the deed and equity theft scheme against plaintiff, utilizing several false written instruments. On

9

information and belief, no sale, conveyance of transfer of the Premises occurred on or about February 18, 2013, in the offices of Monroe's counsel, Andrew M. Tilem, Esq., or with defendant Kaufman, acting at times under the guise or name of, and at other times on behalf of, defendant Unique Homes Andrew Tilem.

36. Shortly thereafter, Rob, a representative of Sea & Sun, appeared at the Premises and informed the tenants to stop paying rent to plaintiff and pay it to Sea & Sun.

37. Thereafter, in or about March 2013, plaintiff began receiving text messages from Sea & Sun saying he illegally sold the premises for $140,000. Upon information and belief Sea & Sun, Moshe and Rob were working with Kaufman to assist Kaufman in swindling plaintiff out of the Premises.

38. Ultimately, plaintiff contacted his attorney and told her what happened. Plaintiff's attorney immediately contacted Tillem and served a Notice of Rescission pursuant to Section 265-a of the New York State Real Property Law, on August 5, 2013 upon Kaufman, Unique Homes, Kaufman's attorney, Tillem and Sea & Sun's attorney, Ted May, Esq.

39. Defendants refused to comply with the demand made in the Notice of Recission and have refused to reconvey (i.e., return) title to plaintiff by withdrawing or setting aside the Putative 2013 Deed in ACRIS or executing a correct and lawful deed to plaintiff. Defendants Monroe have failed to reconvey the deed to the Premises.

40. After several years of litigation in the Kings County Supreme Court, plaintiff, on February 19, 2019, filed a Chapter 11 petition and, to date, remains a debtor in possession in control of the property of the estate, including 253 Monroe Street, Brooklyn, New York, heretofore referred to as the Premises. By order of the Bankruptcy Court (Hon. Nancy Hershey Lord), Monroe was permitted to move for partial summary judgment dismissing plaintiff's First, Third and Tenth causes of action. Plaintiff cross-moved for partial summary judgment as to his

First, Third, Fourth and Tenth causes of action.

41. The State Court (Hon. Wayne P. Saitta, JSC, decision dated April 18, 2022) denied defendant's motion and also denied plaintiff's cross-motion to rescind the contract and cancel the Putative 2013 Deed (First Cause of Action), simply due to an issue of fact as to whether the Premises was plaintiff's primary residence. The Premises are plaintiff's primary residence.

42. On or about February 18, 2013, defendants Kaufman and others forged plaintiff's signature on a document purporting to be a deed, or secured plaintiff's signature on said deed under false pretenses. Said document, entitled THIS INDENTURE, purportedly made the 18th day of February 2013 between plaintiff and Unique Homes, was fraudulently made on or about the 18th of February 2013 by defendant Kaufman, or one or more of said defendant's agents or cohorts to prejudice plaintiff's rights in the Premises, and unlawfully purports to convey the Premises from plaintiff to defendant Unique Homes. Said document – also referred to as the "Putative 2013 Deed -- was then fraudulently recorded in ACRIS on March 8, 2013, at CRFN 2013000096505.

43. No lawful conveyance of the Premises took place on or about February 18, 2013, or any other date in 2013. Plaintiff's signature on the deed or indenture recorded in ACRIS on March 8, 2013, at CRFN 2013000096505 was made or secured under false pretenses or is otherwise a false written deed. This action thus seeks, *inter alia*, a declaration that the deed or indenture recorded in ACRIS on March 8, 2013 at CRFN 2013000096505, and each and every deed that is based on derived from or granted through the Putative 2013 Deed, is *void ab initio*, or otherwise a legal nullity.

44. Plaintiff also seeks the relief to which he is entitled under the Home Equity Theft Prevention Act of 2007, as codified in RPL § 265-a.

45. This action seeks, *inter alia*, a declaration that plaintiff is the current and only valid owner of the Premises.

## FIRST CAUSE OF ACTION

46. Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs 1-45 of the complaint, with the same force and effect as if more fully set forth at length herein.

47. This cause of action is brought pursuant to Article 15 of the New York Real Property Actions and Proceedings Law.

48. Without plaintiff's knowledge or consent, defendants fictitiously placed a copy of his signature on a deed – on a document entitled THIS INDENTURE and dated February 18, 2013 -- and then, on or about March 8, 2013, without plaintiff's knowledge or consent, defendants recorded a transfer of 253 Monroe Street, Brooklyn, New York 11216 to Monroe Unique Homes, LLC.

49. At all relevant times defendants had no legal authority to affect this transfer or act on behalf of plaintiff, the true fee owner.

50. Plaintiff did not willingly convey or authorize a conveyance of any title or interest in the Premises to Monroe.

51. Defendants claim from the public record that they have a fee interest in the Premises adverse to that of plaintiff.

52. Defendants claim that they have a fees interest in the premises are a cloud upon the title of plaintiff in and to the Premises, which diminish the value of the Premises, and interfere with plaintiff's title thereto, ownership interest and possession therein.

53. No defendant is or might be an infant, mentally impaired or ill or an alcohol abuser. A judgment in this action will not affect a person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant otherwise, could afterward become entitled to a beneficial estate or interest in the Premises; and every person in being who would have been entitled to such estate or interest if such event had happened

immediately before the commencement of the action is named as a party to this action. There is no other person in being who would have been entitled to such estate or interest if such event had happened immediately before the commencement of this action.

54. By reason of the foregoing, plaintiff is entitled to judgment pursuant to RPAPL Article 15, (i) determining and declaring that the improper and unauthorized transfer of the Premises are void and should be vacated of record; (ii) determining and declaring that defendants possess no right, title or interest in the Premises; and (iii) directing the Kings County Clerk to cancel and invalidate the improper and unauthorized transfer as a matter of public record.

55. Plaintiff is entitled to judgment declaring the validity of his claim to any estate or interest in the Premises.

56. Plaintiff is entitled to a judgment barring all defendants and every person or entity claiming under them from all claims to an estate or interest in the Premises.

57. There exists a justiciable controversy among the parties.

58. Plaintiff has no adequate remedy in law.

**WHEREFORE**, it is respectfully requested that plaintiff be granted judgment on his First Cause of Action, together with costs and disbursements and such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 11, 2023

KORNFELD & ASSOCIATES, P.C.
Attorneys for the Debtor and
Debtor-in-Possession

By: /s/ Randy M. Kornfeld
Randy M. Kornfeld (RMK 9908)
240 Madison Avenue, 8th Floor
New York, New York 10016
(212) 759-6767